(80 App. Div. 505.)

### WASSERMAN v. BACON.

(Supreme Court, Appellate Division, Second Department. March 26, 1903.)

1. AGENCY—UNDISCLOSED PRINCIPAL—EXECUTORY SALE.
     Defendant agreed to sell his saloon for a certain sum, payable in stipulated yearly installments, conveyance to be made only after the price was paid in full, and the purchaser in the meantime to conduct the business, receive a fixed sum monthly, and pay the balance to a trustee. *Held* that defendant, during the conduct of the business by the buyer, was an undisclosed principal, liable for the debts the buyer contracted in connection with the business.

2. SAME—KNOWLEDGE OF RELATION—EVIDENCE.
     In an action against an undisclosed principal for goods purchased by the agent, the seller of the goods testified that he did not know of the principal's connection with the business carried on by the agent until after the credit was extended, while the agent testified he told the seller at the time of the sale that he was a servant of the principal. *Held* that, as the evidence raised a question of fact as to an election to extend credit to the agent, the dismissal of the complaint was error.

Appeal from Special Term, Kings County.

Action by Benoit Wasserman against Charles P. Bacon. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, and HOOKER, JJ.

Ira Leo Bamberger (John Marcus, on the brief), for appellant.
Edward Stetson Griffing, for respondent.

HOOKER, J. It is elementary and undisputed that if the purchaser of goods is an undisclosed agent, his principal not being known to be

such, and credit is given to such agent, the vendor can hold responsible either the principal or agent, at his election. Meeker v. Claghorn, 44 N. Y. 349.

In this case the defendant was the owner of a certain liquor business, lease, utensils of trade, stock in trade, furniture, and other property, in the city of New York, and agreed to sell and transfer the same to one Burgdorff for the sum of $25,000, at the rate of $6,000 per year. It was provided that Burgdorff should have, out of the receipts, $125 per month as his own, and that all of the balance should be turned over to a trustee. The agreement continues as follows:

"Upon said Burgdorff fully complying with this agreement and paying purchase price in full, said Bacon will convey and transfer said business, lease, stock in trade, fixtures, furnishings, and appurtenances to said Burgdorff; but until such time he shall not be entitled to such conveyances."

It also appears from the evidence of the plaintiff that he had a talk with the defendant not long before the action was commenced, and the defendant told him, in speaking of the account: "You do not lose a cent on it. * * * I will pay you; you need not worry."

This agreement was executed in 189/. Burgdorff never paid the $25,000, and the defendant never conveyed nor transferred to him the business, lease, stock in trade, fixtures, or furnishings, or any one or more of those items. From 1894 to 1901, Burgdorff conducted the saloon, and nothing appeared by which the plaintiff or any other person dealing with him might suspect that Bacon had any interest whatever in the business. Between the execution of that agreement and the month of May, 1901, plaintiff sold a large quantity of cigars to Burgdorff, and charged them to him, supposing, as he testified, that he was the owner of the business. Burgdorff made an assignment for the benefit of his creditors in the latter part of May, 1901, and then this plaintiff learned for the first time the true relationship which Bacon bore to the business. Thereupon this action was commenced, the plaintiff claiming to be entitled to recover against him as the undisclosed principal of Burgdorff.

At the close of plaintiff's case the defendant moved for a dismissal of the complaint, and this motion was granted. Early in the trial the jury were discharged by consent, and the matter submitted to the determination of the court. The court made no findings, however, and we must treat his dismissal of the complaint in the same manner as we would a nonsuit with the jury present.

We cannot construe the agreement of 1894 between Burgdorff and the defendant otherwise than as an agreement, in effect, that Burgdorff should manage the defendant's business, and should have therefor a salary of $125 a month; that if Burgdorff, as such manager, could make for the defendant a profit of $25,000 in four years, he, the defendant, would turn over and convey to his manager the whole business, including business, lease, stock, fixtures, and everything pertaining thereto. Had such been the language of the agreement, Bacon would of course have been the undisclosed principal, and plaintiff would have been entitled to hold the defendant at his election.

It was also held as undisputed and elementary in Meeker v. Claghorn, supra, that if a principal claims that the vendor knew him to be

such, and gave credit exclusively to the agent, he assumes the burden of establishing this by clear proof, the assumption being that the credit is given to the principal. In this case the plaintiff swore that he never knew of Bacon's connection with the business until after Burgdorff's assignment for the benefit of creditors. Burgdorff swore, however, that about the time this agreement between Burgdorff and defendant was entered into he informed the plaintiff that he was at work for Bacon at $125, and that Bacon was the real owner of the business. This defendant invokes the rule of law that, while the plaintiff knew that he was the principal and still charged the goods to Burgdorff, it was an election to extend credit to Burgdorff, and the defendant was not liable. In view of the conflicting evidence, it was a question of fact to be determined, and the dismissal was error.

The judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.